**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SAM EDDY**, | |
| Plaintiff, | Case No.: 1:23-cv-01818 |
| vs. | |
| **ENTERPRISE HOLDINGS, INC.,** a Missouri corporation**,** and | |
| **ENTERPRISE RENT-A-CAR COMPANY - MIDWEST, LLC,** a Delaware limited liability company, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Sam Eddy ("Plaintiff"), through counsel, for his complaint against defendants, Enterprise Holdings, Inc. and Enterprise Rent-A-Car Company - Midwest, LLC (together, "Defendants"), states:

### NATURE OF THE CASE

1.      This is an action to recover statutory damages arising out of the Defendants' unlawful collection, use, retention and disclosure of the personal biometric identifiers and biometric information of Plaintiff in violation of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 (2008).

### THE PARTIES

2.      Plaintiff is a natural person who is domiciled in LeRoy, Illinois.

3.      Enterprise Holdings, Inc. ("Enterprise Holdings") is a corporation organized and existing in the state of Missouri. Enterprise Holdings maintains its principal place of business and

nerve center at 600 Corporate Park Dr., Saint Louis, Missouri. Enterprise Holdings is a citizen of Missouri.

4.　　　Enterprise Holdings operates as a holding company, and owns and operates the Enterprise Rent-A-Car, National Car Rental, and Alamo Rent A Car brands through an integrated global network of independent regional subsidiaries. The privately held company operates nearly 10,000 branches in more than 90 countries across North America, Central America, South America, the Caribbean and Europe, as well as parts of the Asia-Pacific and the Middle East.

5.　　　Through its affiliates and subsidiaries, Enterprise Holdings does business in Illinois and in this District.

6.　　　Enterprise Rent-A-Car Company - Midwest, LLC ("Enterprise Midwest") is a limited liability company organized and existing in the state of Delaware. Enterprise Midwest maintains its principal place of business and nerve center at 4722 Forest Grove Dr., Bettendorf, Iowa. The sole member of Enterprise Midwest is Enterprise Holdings. Enterprise Midwest is a citizen of Missouri based upon the citizenship of its sole member, Enterprise Holdings.

## JURISDICTION AND VENUE

7.　　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000.00[1] exclusive of punitive damages, and/or interest and costs, and is between citizens of different States.

8.　　　This Court has personal jurisdiction over Defendants because each has a registered agent in Illinois and each conducts substantial business in Illinois.

---

[1] Plaintiff seeks statutory, liquidated damages of $1,000 to $5,000 for each violation of BIPA and alleges that there were not less than 4,000 BIPA violations.

9.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and Defendants each reside and may be found in this District.

## RELEVANT FACTS

10.     Enterprise Midwest operates automobile rental services as a subsidiary of Enterprise Holdings in Illinois and in this District.

11.     Enterprise Holdings exercises substantial control over Enterprise Midwest, including control and direction of that subsidiary's business practices and employee management practices, including with respect to employee privacy and data protection matters.

12.     Enterprise Holdings publishes and maintains a public Code of Conduct, addressing employee management matters, which refers to its regional subsidiaries' employees as "our employees" and expressly governs its regional subsidiaries' employee management practices, referring to itself and its subsidiaries as a collective "Company." A true and accurate copy of Defendants' shared, publicly-available Code of Conduct is attached hereto as *Exhibit A*.

13.     The Code of Conduct states: "Enterprise Holdings, Inc., owns a network of regional subsidiaries in the United States which operate the Enterprise Rent-A-Car, National Car Rental and Alamo Rent A Car brands, as well as Enterprise Car Sales, and Enterprise Car and Ride Sharing."

14.     This Code of Conduct ("Code"), and the policies and principles underlying it, have been adopted by Enterprise Holdings, Inc. and, individually, by management of each subsidiary company. The word "Company," where used in the Code, refers to Enterprise Holdings, Inc., and/or, in their individual capacities, each subsidiary company." *Id*. at p. 2.

15.     The Code of Conduct expressly applies to all those within "the Company," including, by definition, employees of Defendant Enterprise Holdings' regional subsidiaries, including Enterprise Midwest.

16.     With respect to employee privacy, the Code of Conduct states that Enterprise Holdings and its subsidiaries protect sensitive information, including employees' personal information, "by limiting access to those who have a business need to know it, securing the systems that transmit or store it, and *ensuring our use of the information complies with privacy laws.*"

17.     The Code of Conduct also provides that Enterprise Holdings and its subsidiaries are "committed to protecting the privacy of its employees' private information."

18.     As is evident from the Code of Conduct, Defendant Enterprise Holdings and its subsidiary Enterprise Midwest subscribe to common policies, implemented by Enterprise Holdings, covering various areas of employee management, and do not observe corporate formalities with respect to employee management. Defendant Enterprise Holdings speaks for its regional subsidiaries when it comes to managing employee privacy, and has publicly stated both its intention and its regional subsidiaries' intentions to comply with all privacy laws.

19.     Thus, on information and belief, at all relevant times Defendant Enterprise Holdings has exercised primary, if not exclusive, control over Enterprise Midwest's practices with respect to employee privacy matters and other employment conditions.

20.     As is evident from its Code of Conduct, Defendant Enterprise Holdings had the exclusive final say as to whether its regional subsidiaries would comply with all privacy laws, including BIPA.

21.     As is evident from its Code of Conduct, which does not differentiate between itself and its regional subsidiaries, Defendant Enterprise Holdings  has engaged in an undertaking to

ensure legally-compliant and sufficient working conditions, which includes ensuring workers within its facilities are not subject to illegal working conditions, such as non-compliant biometric timekeeping systems and conduct by its subsidiaries that jeopardizes health, safety, or personal data.

22.     Plaintiff was employed by Enterprise Midwest from 2011 to 2020.

23.     Plaintiff received his paychecks from Enterprise Midwest, but Enterprise Holdings controlled his work environment, including timekeeping, privacy, and employee behavior and discipline.

24.     Enterprise Holdings and Enterprise Midwest jointly operated Plaintiff's workplace.

25.     During the course of his employment, Plaintiff was required as a condition of employment to have his fingerprints scanned and stored in a system defendants maintain for time tracking and employee authentication.

26.     While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have no means by which to

prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

27.     A nefarious market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018).[2]

28.     In late 2007, a biometrics company called Pay by Touch - which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions - filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records - which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data - could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

29.     Recognizing the need to protect its citizens from situations like these, in 2008, Illinois enacted BIPA in light of the "very serious need [for] protections for the citizens of Illinois when it comes to [their] biometric information."[3]

---

[2] Available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security_-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.
[3] 95th Ill. Gen. Assem. House Proceedings, May 30, 2008, at 249 (statement of Representative Ryg), available at http://www.ilga.gov/house/transcripts/htrans95/09500276.pdf.

30.     Biometrics are unlike other unique identifiers used to access finances or other sensitive information. "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."[4]

31.     To address this legitimate concern, Section 15(b) of BIPA provides that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3)  receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.[5]

32.     For BIPA purposes, a "biometric identifier" is a personal feature that is unique to an individual and specifically includes fingerprints.

33.     BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based upon an individual's biometric identifier used to identify the individual."[6]

---

[4] 740 ILCS 14/5(c).
[5] 740 ILCS 14/15(b).
[6] *Id.*

34.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

35.     BIPA specifically applies to employees who work in the State of Illinois.

36.     BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

37.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an identifier that is used to identify an individual. *See id.*

38.     BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)-(d). BIPA makes it unlawful for companies to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." Furthermore, no company may "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless":

(1) the person or customer consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the person or customer;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

*See* 740 ILCS 14/15(c)-(d).

39.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## FACTS RELATED TO PLAINTIFF

40.     From at least January of 2015 through early 2020, Plaintiff was required to scan his fingerprints using timeclock equipment provided by Defendants at the start and conclusion of each day and each time he left and returned from lunch or break.

41.     Plaintiff's fingerprints were scanned no less than four times each day that he worked for Defendants and at least 4,000 times over the course of his employment by Defendants.

42.     Neither Enterprise Holdings or Enterprise Midwest ever informed Plaintiff of the specific limited purposes or length of time for which the Defendants collected, stored, or used fingerprints.

43.     Similarly, neither Enterprise Holdings or Enterprise Midwest ever informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

44.     Plaintiff never signed a written release allowing Enterprise Holdings or Enterprise Midwest to collect or store his fingerprints.

45.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Enterprise Holdings' or Enterprise Midwest's collective violations of the BIPA alleged herein.

46.     Defendants knew, or were reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet wholly failed to comply with the statute. As is evident from Defendants' Code of Conduct, Defendants represent that they strive to stay abreast of and comply with applicable privacy laws, but failed to do so with respect to BIPA.

47.     Alternatively, Defendants negligently failed to comply with BIPA.

48.     Plaintiff now seeks damages under BIPA as compensation for the injuries Enterprise Holdings or Enterprise Midwest has caused.

### COUNT ONE

**Violation of §15(b) of BIPA**
**[Failure to Obtain Informed Written Consent and Release**
**Before Obtaining Biometric Identifiers or Information]**

49.     Plaintiff restates paragraphs 1 through 48 of the complaint as if set out here in full.

50.     BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's

biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

51.     Defendants each failed to comply with these BIPA mandates.

52.     Defendants are each an entity registered to do business in Illinois and thus each qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

53.     Plaintiff is an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendants. *See* 740 ILCS 14/10.

54.     The Plaintiff's biometric identifiers were used to identify his and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

55.     Defendants systematically and automatically collected, used, stored, and disclosed biometric identifiers and/or biometric information of Plaintiff without first obtaining the written release required by 740 ILCS 14/15(b)(3).

56.     Defendants did not inform Plaintiff in writing of the specific length of term for which biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

57.     By collecting, storing, and using Plaintiff's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's privacy in their biometric identifiers or biometric information as set forth in BIPA *each time* the Defendant collected, stored or used Plaintiff's or the Class's biometric identifier. *See* 740 ILCS 14/1, *et seq.*

58.     Defendants knew, or were reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet completely failed to comply with the statute. As is evident from Defendants' Code of Conduct, Defendants represent that they strive to stay abreast of and comply with applicable privacy laws, but failed to do so with respect to BIPA. *Exhibit A*.

59.     Alternatively, Defendants negligently failed to comply with BIPA.

60.     Plaintiff seeks statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT TWO

### Violation of §15(d) of BIPA
### [Disclosure of Biometric Identifiers and Information Without Obtaining Consent]

61.     Plaintiff restates paragraphs 1 through 48 of the complaint as if set out here in full.

62.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

63.     Defendants each failed to comply with this BIPA mandate.

64.     Defendants are each an entity registered to do business in Illinois and thus each qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

65.     Plaintiff is an individual who had his "biometric identifiers" (in the form of his fingerprints) collected by Defendants, as explained in detail above. *See* 740 ILCS 14/10.

66.     Plaintiff's biometric identifiers were used to identify his and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

67. Upon information and belief, by utilizing a biometric time clock, Defendants each systematically and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers and/or biometric information of Plaintiff to at least the payroll company hired by the Defendants without obtaining the consent required by 740 ILCS 14/15(d)(1).

68. By disclosing, redisclosing, or otherwise disseminating Plaintiff's biometric identifiers and biometric information without his consent as described herein, each Defendant violated BIPA *each time* there was a disclosure, redisclosure or dissemination of the Plaintiff's biometric identifiers in violation of Plaintiff's right to privacy in his biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

69. Defendants knew, or were reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet completely failed to comply with the statute. As is evident from Defendants' Code of Conduct, Defendants represent that they strive to stay abreast of and comply with applicable privacy laws, but failed to do so with respect to BIPA. ***Exhibit A.***

70. Alternatively, Defendants negligently failed to comply with BIPA.

71. Plaintiff seeks statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully request that the Court enter judgment in his favor and against Defendants, jointly and severally, for damages for each of Defendants' violations of

the BIPA, pursuant to 740 ILCS 14/20; and award Plaintiff reasonable litigation expenses and

attorneys' fees.

## JURY DEMAND

Plaintiff hereby respectfully demands a trial by jury.

Dated: March 23, 2023

*Respectfully submitted,*

**SAM EDDY**

*/s/ Nick Wooten*
DC Law, PLLC
1012 West Anderson Lane
Austin, Texas 78757
(512) 220-1800
nick@texasjustice.com

Rusty A. Payton
DC Law, PLLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(773) 682-5210

Adam J. Feuer
DC Law, PLLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(312) 648-6143

Majdi Hijazin
DC Law, PLLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(773) 544-7668

*Counsel for Plaintiff*